In re Petition of Paul Anthony Brereton **EVANS** and Richard Claude Boys–Stones, as Joint Provisional Liquidators of The Orion Insurance Company PLC, et al., Debtors in Foreign Proceedings.

Paul Anthony Brereton **EVANS** and Richard Claude Boys–Stones, as Joint Provisional Liquidators of The Orion Insurance Company PLC, Debtor in a Foreign Proceeding, Plaintiffs,

v.

HANCOCK, ROTHERT & BUNSHOFT, Defendant.

Bankruptcy Nos. 94–B–44968 (SMB), 94–B–44969 (SMB).
Adv. No. 94/9241A.

United States Bankruptcy Court, S.D. New York.

Jan. 13, 1995.

194

Townley & Updike (Cory E. Friedman, David M. Proper, of counsel), New York City, for Hancock, Rothert & Bunshoft.

Chadbourne & Parke (Kenneth P. Coleman, Jonathan F. Bank, Peter R. Chaffetz, Margaret Groarke, Philip J. Costa, of counsel), New York City, for Joint Provisional Liquidators.

## MEMORANDUM DECISION AND ORDER DENYING MOTION TO DISMISS OR TRANSFER ADVERSARY PROCEEDING FOR IMPROPER VENUE

STUART M. BERNSTEIN, Bankruptcy Judge:

The foreign representatives (the "Liquidators") of The Orion Insurance Company PLC ("Orion"), which is undergoing insolvency proceedings in the United Kingdom, filed this ancillary proceeding pursuant to 11 U.S.C. § 304. As discussed in more depth below, venue appears to be based on the location, in this district, of Orion's principal United States place of business or principal United States assets.

The Liquidators recently commenced an adversary proceeding in this Court to compel the turnover of escrowed funds located in San Francisco, California. The narrow issue

presented is whether the Liquidators were required to file that turnover action, as an independent ancillary proceeding, in the Northern District of California instead of in this Court as part of their pending ancillary proceeding. For the reasons stated below, the Court holds that the Liquidators did not have to file a separate ancillary proceeding in the Northern District of California, and can litigate their turnover action in this Court. Further, this Court declines to transfer the turnover action to the California Bankruptcy Court.

## FACTS

At all relevant times prior to the commencement of the foreign insolvency proceeding described below, Orion was authorized to carry on an insurance business within the meaning of the United Kingdom Insurance Companies Act. Orion's principal place of business was located in London, and its insurance-related business focused on the London market. On October 20, 1994, and as a result of Orion's worsening financial position, the Institute of London Underwriters presented a Winding–Up Petition to the High Court under the United Kingdom Insolvency Act of 1986.

The High Court appointed Messrs. Paul Anthony Brereton Evans and Richard Claude Boys–Stones, the Liquidators, as the joint provisional liquidators in connection with those proceedings. On October 24, 1994, the Liquidators commenced this ancillary proceeding pursuant to 11 U.S.C. § 304 to assist them in the liquidation of Orion's assets located in this country. The petition alleges that Orion has "substantial assets in the United States comprised primarily of reinsurance recoverables." (Petition ¶ 9). In addition, the petition alleges that Orion has an interest in an over funded trust fund located in this district and equity in collateral backing letters of credit purchased by Orion in this district. (*Id.*) Further, these letters of credit "support reinsurance obligations to

the United States cedents, some of whom are located in New York." (*Id.*) This implies—at least to the Court—that the Liquidators have based venue on some combination of the existence, in this district, of Orion's principal United States place of business or principal United States assets. In any event, no one has challenged the general venue of the case—*i.e.*, argued that Orion's United States principal place of business or principal assets lie elsewhere.

According to the petition, Orion and its subsidiary, the London and Overseas Insurance Company PLC—the subject of a companion ancillary proceeding—are involved in 226 cases pending in 34 states and 114 judicial districts in this country.[1] As a result, shortly after they commenced the case, the Liquidators sought and obtained a nation-wide temporary restraining order which was designed to give them the same relief they would have obtained by virtue of the automatic stay had they instead filed a case under 11 U.S.C. § 301.[2]

Orion also holds causes of action against persons in possession of estate property that is located in the United States, and it is one such person that now challenges venue. The movant, Hancock, Rothert & Bunshoft ("Hancock"), is a California law firm that provided legal services to Orion, in connection with its United States insurance activities, prior to its insolvency. Hancock and Orion had established an escrow arrangement to govern the payment of Hancock's legal fees and expenses. The escrow account is located in San Francisco.

On December 14, 1994, the Liquidators commenced an adversary proceeding against Hancock in this district to recover those funds. Hancock has moved to dismiss the adversary proceeding on the ground that the Liquidators must file a new ancillary proceeding in the San Francisco bankruptcy court. Alternatively, Hancock seeks to transfer venue to that court in the interest of

---

1. This seems exaggerated; there are only 94 federal judicial districts in the United States. *See* 28 U.S.C. § 132.

2. The Court does not suggest that Orion or the Liquidators could have filed a voluntary petition

under Section 301. Orion appears to be a foreign insurance company engaged in business in the United States, and hence, cannot be a debtor under chapter 7, 11 U.S.C. § 109(b)(3), or chapter 11. *Id.* § 109(d).

justice and for the convenience of the parties.[3]

## DISCUSSION

### A. Venue Under 28 U.S.C. § 1410

■ Section 1410 governs the venue of an ancillary proceeding, and Hancock bases its motion on the "plain meaning" of this statute. It provides as follows:

(a) A case under section 304 of title 11 to enjoin the commencement or continuation of an action or proceeding in a State or Federal court, or the enforcement of a judgment, may be commenced only in the district court for the district where the State or Federal court sits in which is pending the action or proceeding against which the injunction is sought.

(b) A case under section 304 of title 11 to enjoin the enforcement of a lien against a property, or to require the turnover of property of an estate, may be commenced only in the district court for the district in which such property is found.

(c) A case under section 304 of title 11, other than a case specified in subsection (a) or (b) of this section, may be commenced only in the district court for the district in which is located the principal place of business in the United States, or the principal assets in the United States, of the estate that is the subject of such case.

Sections 1410(a) and (b), respectively, seem to speak to a "one shot" situation in which a foreign representative files an ancillary proceeding to enjoin a single pending action or to recover a single piece of estate property. In this case, however, the Liquidators relied on 28 U.S.C. § 1410(c) because Orion's principal United States assets or place of business are located in this district.

Hancock nevertheless contends that a foreign representative in the Liquidators' position, who files an ancillary proceeding properly venued under 28 U.S.C. § 1410(c) and thereafter seeks to enjoin foreign litigation against his debtor or recover estate property located in another district, must file a new ancillary proceeding in that district. In other words, each injunction or turnover action must be viewed separately for venue purposes. Hence, the initial basis of venue does not support the subsequent request for injunctive or turnover relief concerning a litigation or property in another district.

Hancock's interpretation has apparently been accepted by some bankruptcy commentators. *See* 1 L. King, *et al., Collier on Bankruptcy* ¶ 3.02[3][b] at 3–153 (15th ed. 1994); 6 J. Queenan, *et al., Chapter 11 Theory & Practice: A Guide to Reorganization* § 33.09 at 33:21 (1994). The few reported cases have reached the contrary conclusion in the injunction cases, permitting the foreign representative facing multiple lawsuits to commence a proceeding where the debtor's principal assets or business can be found, 28 U.S.C. § 1410(c), and then obtain a nationwide injunction similar to the automatic stay. *E.g., Saleh v. Triton Container Int'l, Ltd. (In re Saleh),* 175 B.R. 422, 426 (Bankr.S.D.Fla. 1994); *see In re Kingscroft Ins. Co.,* 150 B.R. 77, 80–81 (Bankr.S.D.Fla.1992).[4]

■ The statute is ambiguous and susceptible to either interpretation. *In re Saleh,* 175 B.R. at 425–26. Yet it must be read

---

3. Hancock actually made its motion before the Liquidators even filed the adversary proceeding. It asked the Court to dismiss the ancillary proceeding, to the extent the Liquidators sought a turnover, or alternatively, to transfer the proceeding pursuant to 28 U.S.C. §§ 1404 or 1412. At the oral argument, held December 14, 1994, the Court questioned Hancock's counsel about the "ripeness" of a pre-emptive motion, suggesting that the motion was premature since the Liquidators had not filed (and might never file) the anticipated turnover action. Hancock's counsel explained that in another ancillary proceeding pending before another member of this Court, Hancock had waited until it was sued to make its venue motion, only to have the Court rule that Hancock had waived its venue objection

because it had failed to raise it at the beginning of the case.

The Liquidators' counsel remained silent throughout this exchange, and inexplicably failed to apprise the Court that the complaint would be filed—if it had not already been filed—that same day. The Court expects greater candor. In any event, the actual filing of the turnover proceeding renders the "ripeness" issue academic. The Court will treat the Hancock motion as being directed at the pending complaint.

4. The Liquidators have brought to my attention several oral bench decisions on this very issue rendered by other members of this Court. They uniformly hold that the foreign representative finding himself in the situation posited above can bring a single ancillary proceeding, properly venued under 28 U.S.C. § 1410(c), and then obtain

in conjunction with 11 U.S.C. § 304, *In re France*, 63 B.R. 777, 779 (D.N.H.1986), and in this respect, Hancock's interpretation contravenes the purpose of that provision. The Section 304(c) guidelines are "designed to give the court the maximum flexibility in handling ancillary cases," and in applying its provisions, courts should "be guided by what will best assure an economical and expeditious administration of the estate." S.Rep. No. 989, 95th Cong., 2d Sess. 35 (1978); H.Rep. No. 595, 95th Cong., 1st Sess. 324–25 (1977), U.S.Code Cong. & Admin.News 1978, pp. 5787, 5821, 6281. Section 304 was designed to help foreign representatives administer their United States assets and prevent dismemberment and distribution of those assets located in this country. *See, e.g., In re Koreag, Controle et Revision, S.A.*, 961 F.2d 341, 348–49 (2d Cir.), *cert. denied*, —— U.S. ——, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992); *Victrix S.S. Co. v. Salen Dry Cargo A.B.*, 825 F.2d 709, 713–14 (2d Cir.1987); *Cunard S.S. Co. v. Salen Reefer Services A.B.*, 773 F.2d 452, 454–55 (2d Cir.1985). It aims to economize and expedite the orderly and equitable distribution of the foreign estate, *In re Victrix S.S. Co.*, 825 F.2d at 713–14; *see In re Petition of Tam*, 170 B.R. 838, 846 (Bankr. S.D.N.Y.1994), and not proliferate litigation between the foreign representatives and persons in the United States.

Acknowledging these goals, the *Saleh* court observed that they would be thwarted, and enormous burdens would be placed on the foreign representative of a properly venued ancillary proceeding, if the law compelled him to commence a new ancillary proceeding every time he sought to enjoin a foreign litigation or recover property outside of the district. 175 B.R. at 425–26. Further, multiple litigations involving similar issues brought before several judges raised the risk of inconsistent results, subjected the foreign representative to multiple discovery proceedings, and could create "a procedural nightmare inconsistent with the intended purpose of § 304. *Id.* at 426.

This construction of 28 U.S.C. § 1410 not only comports with Section 304, but is also consistent with the principles that venue statutes should be liberally construed to avoid unnecessary litigation and excessive costs. 3A N. Singer, *Sutherland Statutory Construction* § 67.04 at 70 (5th ed. 1992). Hancock's interpretation of 28 U.S.C. § 1410 leads to the opposite result, and must, therefore, be rejected.[5] Thus, the Court concludes that once the foreign representative commences an ancillary proceeding that is properly venued under § 1410(c), he may sue in his "home" court to recover estate property that is located in another district.

## B. Transfer of Venue

Hancock asks the Court, in the alternative, to transfer the adversary proceeding to the Northern District of California in the interest of justice and for the convenience of the parties pursuant to 28 U.S.C. § 1412 and Federal Bankruptcy Rule 1014(a)(1). A strong presumption exists for maintaining venue of a proceeding where the case is pending. *Continental Airlines, Inc. v. Chrysler (In re Continental Airlines, Inc.)*, 133 B.R. 585, 587 (Bankr.D.Del.1991). The party seeking to change the venue of an adversary proceeding bears the burden of proof. *Things Remembered, Inc. v. BGTV, Inc. (In re Things Remembered, Inc.)*, 151 B.R. 827, 832–33 (Bankr.N.D.Ohio 1993); *In re Continental Airlines*, 133 B.R. at 587; *A.R.E. Mfg. Co. v. D & M Nameplate, Inc. (In re A.R.E. Mfg. Co.)*, 124 B.R. 912, 914 (Bankr.M.D.Fla.1991). The relevant criteria include the location of the parties, the accessibility of proof, the expense and ability of obtaining witnesses, including unwilling witnesses, the enforceability of any judgment rendered, the ability to receive a fair trial, the foreign state's interest in deciding local cases under its own state law and the overall economics of estate administration. *In re Things Remembered*, 151 B.R. at 832; *In re Continental Airlines*, 133 B.R. at 587–88; *In re A.R.E. Mfg.*, 124 B.R. at 914; *see Greene*

---

nationwide injunctive relief. Nationwide injunctions have been the practice followed in this district. *See e.g., In re Rubin*, 160 B.R. 269, 283 (Bankr.S.D.N.Y.1993); *In re Petition of Brierly*, 145 B.R. 151, 168–69 (Bankr.S.D.N.Y.1992).

5. Hancock's literal construction would also require a foreign representative, who bases venue on 28 U.S.C. § 1410(c) and subsequently discovers additional assets in his "home" court's jurisdiction, to commence a new ancillary proceeding in the "home" court's jurisdiction to recover that property.

*v. Creative Equity Corp. (In re Hoffman Advertising Group, Inc.)*, 62 B.R. 823, 829 (Bankr.S.D.N.Y.1986).

Hancock did not offer any proof on this motion; it merely submitted legal memoranda arguing that the turnover action is a non-core proceeding, which may not be correct,[6] and summarily concluding, without evidence, explanation or elucidation, that its law practice, the escrow funds and most of the witnesses are in California. It has, therefore, failed to carry its burden of proof.

## CONCLUSION

The Liquidators' turnover proceeding against Hancock is properly venued in the Southern District of New York. Further, Hancock has failed to show that transfer of the venue to California will serve the convenience of the parties or the interest of justice.

IT IS SO ORDERED.

---

**6.** The Liquidators' claim arguably arises under 11 U.S.C. § 304, and therefore, would appear to be core. While it is true that the underlying issues will be determined under state law, "[t]he relevant inquiry is whether the nature of this adversary proceeding, rather than the state or federal basis for the claim, falls within the core of federal bankruptcy powers." *In re Manville Forest Products Corp.*, 896 F.2d 1384, 1389 (2d Cir.1990). Further, turnover proceedings are core. *See* 28 U.S.C. § 157(b)(2)(E).