**In re Petitions of Jukka LAITASALO and Ossi Sokka, as Joint Administrators of Kansa General International Insurance Company Ltd. and Kansa Reinsurance Company Ltd., Debtors in Foreign Proceedings.**

**Bankruptcy Nos. 95–B–40385 (JHG), 95–B–40386 (JHG).**

United States Bankruptcy Court,
S.D. New York.

March 11, 1996.

Costigan & Berns by William F. Costigan, James D. McConnell Jr., New York City, for Respondent Linda Kaiser, Insurance Commissioner of the Commonwealth of Pennsylvania, as the statutory Rehabilitator of Mutual Fire, Marine & Inland Insurance Company.

Gilbert Segall and Young L.L.P. by H. Barry Vasios, New York City, for the Joint Administrators of Kansa General International Insurance Company Ltd. and Kansa Reinsurance Company Ltd.

## DECISION ON MOTION TO DISMISS THE PETITIONS

JEFFRY H. GALLET, Bankruptcy Judge.

### I. Introduction

Linda Kaiser ("Kaiser"), the Insurance Commissioner of the Commonwealth of Pennsylvania, in her capacity as the statutory Rehabilitator of the Mutual Fire, Marine & Inland Insurance Company ("Mutual Fire") moves to dismiss "the ancillary peti-

tions" of Kansa General International Insurance Company Ltd. and Kansa Reinsurance Company Ltd. (collectively the "Kansa Companies" or "Kansa"), filed under 11 U.S.C. § 304 of the Bankruptcy Code, on the grounds that the relief sought is barred by the McCarran–Ferguson Act, 15 U.S.C.A. § 1011 et seq.

In support of her motion, Kaiser argues that Kansa's ancillary petitions and their motions for related relief, essentially ask this Court to supersede state insurance regulatory statutes, which establish procedures for the conservation and liquidation of assets of alien insurers, are in violation of the McCarran–Ferguson Act. Moreover, Kaiser argues that her rights under New York State's insurance regulatory statutes will be impaired if she is enjoined from fully prosecuting her suit, for approximately $6 million, in the New York State Supreme Court. She objects to any order affecting New York Insurance Law section 1213, which requires Kansa to post security for any possible judgment before they can defend the action. The essence of Kaiser's argument is that she should be able to convert her unsecured claim against Kansa to a secured claim under section 1213.

Petitioners, Jukka Laitasalo and Ossi Sokka, the foreign representatives of the Kansa Companies,[1] oppose the motion. Kansa argues that section 304 is not in direct conflict with the McCarran–Ferguson Act, and therefore, does not violate it. They aver that there is no state ancillary receivership and that there should be complete deference to the foreign insolvency proceeding. They argue that Kansa sought U.S. Bankruptcy Court assistance, and not a state ancillary receivership, because a state receivership would be costly and could lead to preferences by U.S. creditors.

### A. History

On December 30, 1994, liquidation proceedings were commenced in the Helsinki District court of the Republic of Finland on behalf of the Kansa Companies under the Finnish Bankruptcy Code. On the same day, the Helsinki District Court adjudged the debtors bankrupt and appointed joint interim receivers.

On January 27, 1995, ancillary petitions pursuant to section 304 of the Bankruptcy Code were filed here. On January 30, 1995, I signed an order allowing the joint administration of the Kansa estates.

In February of 1995, the Kansa Companies filed a motion for a preliminary injunction. Several parties objected to the motion, including parties holding letters of credit and set off agreements, parties involved in litigations and arbitrations against the debtors, and several State Insurance Commissioners.

On February 16, 1995, I granted the ancillary petitions under section 304 and entered a temporary restraining order. I found that I had jurisdiction under section 304(a), *In re Koreag Controle et Revision S.A.*, 130 B.R. 705, 711, (Bankr.S.D.N.Y.1991) *rev'd on other grounds,* 961 F.2d 341 (2d Cir.1992), and that the petitioners met the venue requirements under 28 U.S.C. § 1410(c), *In re Evans,* 177 B.R. 193 (Bankr.S.D.N.Y.1995). I found that once the foreign representatives commenced these ancillary proceedings, they could sue in this Court for injunctive or turnover relief concerning a litigation or property. *Id.* In addition, under section 304(b), I granted a temporary restraining order. I scheduled the preliminary injunction hearing for April 3, 1995, in order to allow the permanent receivers to be appointed, evaluate the assets of the estates, the claims against them and their interests in these ancillary proceedings.

On March 17, 1995, the Petitioners became the joint permanent receivers. On March 20, 1995, they submitted a written status report.

On April 3, 1995, I held a hearing on Kansa's motion for a preliminary injunction. After the hearing, all parties in attendance, except Kaiser and Integrity Insurance Company in Liquidation by the Commissioner of Insurance of the State of New Jersey ("Integrity"),[2] agreed to an order granting cer-

---

**1.** The Kansa Companies are insolvent alien reinsurance companies.

**2.** Counsel for the Kansa Companies represented to this Court that they have reached an agreement in principle with Integrity and plan to

tain injunctive relief. Among those who consented to the order were the Insurance Commissioner of the State of California, as Liquidator of the Mission Insurance Company Trust, and the Vermont Insurance Commissioner, as Receiver for Ambassador Insurance Company.

Parties who were served, but did not appear, were found in default. Among those in default were the New York State Superintendent of Insurance, the Commissioner of Insurance for the State of Nebraska and the Director of Insurance for the State of Illinois.

## II. The McCarran–Ferguson Act, and § 304 of the Bankruptcy Code

■ Kaiser challenges my jurisdiction to grant ancillary relief under 11 U.S.C. § 304 of the Bankruptcy Code because that relief affects the business of Insurance in violation of the McCarran–Ferguson Act 15 U.S.C.A. § 1012.[3] She argues that granting the ancillary petitions supersedes the reverse preemption granted to state statutes regulating the business of insurance under the McCarran–Ferguson Act.[4] Alternatively, she asks that this Court abstain under *Burford v. Sun Oil Co.*, 319 U.S. 315, 63 S.Ct. 1098, 87 L.Ed. 1424 (1943) (federal abstention is appropriate in order to avoid interference with state laws codifying specialized regulatory schemes).

Congress enacted the McCarran–Ferguson Act in response to the Supreme Court's decision in *United States v. South–Eastern Underwriters Assn.*, 322 U.S. 533, 64 S.Ct. 1162, 88 L.Ed. 1440 (1944) (insurance transactions across state lines involved interstate commerce and were subject to federal regulation under the Commerce Clause). *South–Eastern* reversed earlier law to the contrary. It was considered a threat to the state's power to tax and regulate the insurance industry.

Congress responded to those fears by restoring the supremacy of the states in the regulation of insurance by enacting the McCarran–Ferguson Act within a year of the decision in *South–Eastern. See, United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 113 S.Ct. 2202, 2207, 124 L.Ed.2d 449 (1993) (citations omitted). The Supreme Court clarified its position regarding the McCarran–Ferguson Act in *Fabe*, 508 U.S. at 506–08, 113 S.Ct. at 2211, rejecting the view that McCarran–Ferguson simply overruled *South–Eastern*, but instead,

> transformed the legal landscape by overturning the normal rules of preemption. Ordinarily a federal law supersedes any inconsistent state law. The first clause of § [1012(b)] reverses this by imposing what is, in effect, a clear-statement rule, a rule that state laws enacted 'for the purpose of regulating the business of insurance' do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise. *Id.*

The law in the Second Circuit recognizes the limitations of the McCarran–Ferguson Act's reverse preemption of state insurance laws over federal legislation. *Stephens v. National Distillers and Chemical Corp.*, 69 F.3d 1226, 1231 (2d Cir.1995), (the McCarran–Ferguson Act does not preclude application of the Foreign Sovereign Immunities Act ("FSIA")); *Spirt v. Teachers Ins. and Annuity Ass'n*, 691 F.2d 1054, 1065–66 (2d Cir.1982) (the McCarran–Ferguson Act does not preclude application of Title VII), *cert. granted* and *judgment vacated, remand on other grounds*, 463 U.S. 1223, 103 S.Ct. 3565, 77 L.Ed.2d 1406 (1983), *reinstated on other grounds as modified*, 735 F.2d 23 (2d Cir. 1984), *cert. denied*, 469 U.S. 881, 105 S.Ct. 247, 83 L.Ed.2d 185 (1984); *In re Rubin*, 160 B.R. 269, 278–81 (Bankr.S.D.N.Y.1993) (the

---

submit a stipulation shortly. The only dispute remaining is between Kansa and Kaiser.

**3.** The McCarran–Ferguson Act provides that:
(a) The business of insurance, and every person engaged therein, shall be subject to the laws of the several States which relate to the regulation or taxation of such business.
(b) No act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating

the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance ... 15 U.S.C.A. section 1012.

**4.** Kaiser's action pending in New York State Supreme Court, is part of her liquidation proceeding in Pennsylvania. *See, Foster v. In re Mutual Fire Ins. Co.*, 531 Pa. 598, 614 A.2d 1086 (1992).

McCarran–Ferguson Act did not preclude the granting of section 304 ancillary petition and related relief, the claimant was an insolvent alien re-insurer). *See also, S.E.C. v. National Securities, Inc.,* 393 U.S. 453, 462–64, 89 S.Ct. 564, 569–71, 21 L.Ed.2d 668 (1969) (the McCarran–Ferguson Act does not preclude the application of federal securities regulation); *C.F., Fabe,* 508 U.S. 491, 499–510, 113 S.Ct. 2202, 2207–12 (state statute precluded application of federal statute that regulated business of insurance).

My learned sister, Judge Tina Brozman, in *In re Rubin,* 160 B.R. 269, adopted an analysis to determine whether a federal statute violates the reverse preemption rule of the McCarran–Ferguson Act. The analysis provides that the federal statute "will not be precluded by the McCarran–Ferguson Act unless the state has enacted law for the purpose of regulating insurance activities[,] ... the cause of action [relates to] the 'business of insurance' within the meaning of the [McCarran–Ferguson Act,]" and "application of the federal statute ... would invalidate, impair or supersede the state law regulating insurance." *In re Rubin,* 160 B.R. at 279 (citations omitted). All parts must be satisfied to find a federal statute is precluded by the McCarran–Ferguson Act. *Id.*

The only part disputed is the last. Kaiser argues that the section 304 proceeding violates the McCarran–Ferguson Act because it supersedes state insurance laws and that granting an injunction under section 304 impairs New York Insurance Law section 1213. The Kansa Companies reply that section 304 does not create a direct conflict with the McCarran–Ferguson Act. They argue that Kaiser wants to use New York Insurance Law section 1213 to gain a preference over similarly situated creditors.

### A. New York Insurance Laws

New York has comprehensive state insurance laws that regulate insurers, insolvent insurers and insolvent alien and foreign insurers and re-insurers. *See, In re Rubin,* 160 B.R. 269; N.Y.Ins.Law §§ 7406–7. New York has also enacted the Uniform Insurers Liquidation Act ("UILA"). N.Y.Ins.Law §§ 7408–7415.[5] Many states have adopted similar laws. *See, Twin City Bank v. Mutual Fire Marine & Inland Ins. Co.,* 646 F.Supp. 1139, 1140–41 (S.D.N.Y.1986), *aff'd without op.,* 812 F.2d 713 (2d Cir.1987); *G.C. Murphy Co. v. Reserve Ins. Co.,* 54 N.Y.2d 69, 77, 444 N.Y.S.2d 592, 596, 429 N.E.2d 111 (1981). New York adopted the Uniform Insurers Liquidation Act, to "provide for a uniform, orderly and equitable method of making and processing claims against the defunct insurer and to provide for a fair procedure to distribute the assets of said defunct insurance carrier." *Skandia America Reinsurance Corp. v. Schenck,* 441 F.Supp. 715, 726 (S.D.N.Y.1977) (citations omitted).

The New York Insurance Law provides for conservation of assets of foreign and alien insurers. N.Y.Ins.Law § 7406. Under New York law, the Superintendent of Insurance must apply for an order directing him to conserve assets or commence an ancillary proceeding. N.Y.Ins.Law §§ 7406–7. Here, the New York Superintendent of Insurance was served with notice of this proceeding and declined to appear. This leaves Kaiser in the odd position of arguing that this Court should enforce regulations of the New York State Superintendent of Insurance that the Superintendent, himself, has shown no interest in enforcing. She acts here, not as the Pennsylvania insurance regulator, but, rather, as a creditor who wants to upgrade her status from unsecured to secured.

Other state insurance regulators are also parties. Each state either declined to appear or appeared and did not pursue this issue. Not one instituted state ancillary proceedings.

Since an ancillary receivership was not instituted in New York, or in any other state where Kansa conducted business, the Kansa Companies sought affirmative relief in this Court. They chose to file ancillary proceedings because it saves them the expense of

---

**5.** N.Y.Ins.Law Section 7408 provides: Uniform Insurers Liquidation Act; title; definitions. §§ 7408–7415 may be cited for the UILA.

multiple state court proceedings and prevents preferences, which, they believe, is in the best interests of their creditor body as a whole. I agree.

New York courts favor creditors pursuing their claims against an insurance company undergoing liquidation in a foreign country or state to proceed in that country or state's liquidation proceeding. *In re Rubin*, 160 B.R. at 279, (*citing, G.C. Murphy Co. v. Reserve Insurance Co.*, 54 N.Y.2d 69, 444 N.Y.S.2d 592, 596, 429 N.E.2d 111, 114–115 (1981)); *Twin City Bank*, 646 F.Supp. at 1140–1. New York courts have also required creditors seeking to attach trust funds of foreign insolvent insurers to pursue their claims through the foreign proceeding. *In re Rubin*, 160 B.R. at 280 (*citing, Skandia America Reinsurance Corp. v. Schenck*, 441 F.Supp. at 726). Judge Brozman aptly held that to:

> secure an economical, efficient and orderly liquidation and distribution of the assets of an insolvent corporation for the benefit of all creditors and stockholders, it is essential that the title, custody and control of the assets be entrusted to a single management under the supervision of one court. *In re Rubin* 160 B.R. at 280 (*citing, Vlasaty v. Avco Rent–A–Car System, Inc.*, 60 Misc.2d 928, 304 N.Y.S.2d 118, 120 (Sup. Ct.1969)).

To find otherwise defies logic.

The Second Circuit recently held, in *National Distillers*, 69 F.3d 1226, that the Foreign Sovereign Immunities Act ("FSIA") was not preempted by the McCarran–Ferguson Act. It stated that "the international-law origins of the FSIA, so different from the kind of congressional statutory action that the McCarran–Ferguson Act was enacted to deal with, virtually compel the conclusion that the McCarran–Ferguson Act should not be interpreted to exclude insurance companies from the FSIA's requirements of sovereign immunity." *National Distillers*, 69 F.3d at 1231. Similarly, section 304 of the Bankruptcy Code has international-law origins which are also different from the kind of congressional statutory action that the McCarran–Ferguson Act was enacted to address.

Following the Supreme Court's holdings in *National Securities*, 393 U.S. 453, 89 S.Ct. 564 and *Fabe*, 508 U.S. 491, 113 S.Ct. 2202, the Second Circuit's holdings in *National Distillers*, 69 F.3d 1226 and *Spirt*, 691 F.2d 1054 and Judge Brozman's holding in *Rubin*, 160 B.R. 269, section 304 of the Bankruptcy Code should not be read as precluded by the McCarran–Ferguson Act. The Supreme Court in *National Securities*, 393 U.S. at 460–62, 89 S.Ct. at 568–70, held that the McCarran–Ferguson Act, under the facts of the case, did not bar a federal remedy which affects a matter subject to state insurance regulation. The Court stated that the impairment to the McCarran–Ferguson Act was indirect and that the paramount federal interest was to protect shareholders, which was compatible with the state interest to protect policyholders. *Id.* The Court decided that, "[i]n these circumstances, there is no reason to emasculate the securities laws by forbidding remedies which might prove to be essential." *Id.* at 463, 89 S.Ct. at 570; *C.F., Fabe*, 508 U.S. 491, 113 S.Ct. 2202 (where there is a *direct conflict* between state and federal statutes regulating insurance and the McCarran–Ferguson rules of reverse preemption apply).

In both *National Distillers* and *Spirt* the Court of Appeals held that the McCarran–Ferguson Act was consistent with Federal laws enacted to protect national interests concerning civil rights and foreign policy. Section 304 recognizes and embraces important national concerns—the treatment of foreign debtors, U.S. and foreign creditors and international commerce. The Second Circuit Court of Appeals has held, where appropriate, that the international law principle of comity applies to international bankruptcy proceedings. *See, Cunard S.S. Co. v. Salen Reefer Services AB*, 773 F.2d 452 (2d Cir. 1985). Under New York law, the principle of comity in international bankruptcy proceedings predates the effective date of Section 304. *See, Canada Southern Railway v. Gebhard*, 109 U.S. 527, 539, 3 S.Ct. 363, 371, 27 L.Ed. 1020 (1883); *Clarkson Co. v. Shaheen*, 544 F.2d 624, 629 (2d Cir.1976); *Cornfeld v. Investors Overseas Services, Ltd.*, 471 F.Supp. 1255, 1260 (S.D.N.Y.1979), *aff'd.*

*without op.,* 614 F.2d 1286 (2d Cir.1979). It has been held in this district that:

> Congress, in formulating the provisions of the 1978 Bankruptcy Reform Act governing foreign bankruptcies was not unaware of the increasing growth of multinational businesses [and] ... of the complexities which arose when a large multinational entity became enmeshed in a foreign bankruptcy proceeding ... Experience had taught that in such cases there would be a mad scramble to the U.S. Courts for immediate attachments in contravention of the established goal of U.S. and international bankruptcy law to preserve assets for equitable distribution for all creditors wherever located. *In re Axona Int'l Credit & Commerce Ltd.,* 88 B.R. 597, 604 (Bankr. S.D.N.Y.1988) *aff'd.* 115 B.R. 442 (S.D.N.Y.1990), *appeal dismissed,* 924 F.2d 31 (2d Cir.1991).

The Supreme Court and the Court of Appeals for the Second Circuit have held that the federal government can react to federal concerns, even where the insurance industry is involved. *See, National Securities,* 393 U.S. at 463, 89 S.Ct. at 570 (securities laws); *Spirt,* 691 F.2d at 1065 (civil rights laws); *National Distillers,* 69 F.3d at 1231–34 (foreign policy). Consistent with these prior rulings, section 304 reflects an equally important federal concern—international bankruptcy. *In re Rubin,* 160 B.R. 269, has already recognized the importance of section 304 to international bankruptcy proceedings involving an insolvent alien reinsurance company.

Kaiser's motion raises issues regarding the system of bankruptcy, regulated by the federal government under Article 1 of the United States Constitution, and not the regulation of insurance. Therefore, I find that these section 304 ancillary proceedings are not a per se violation of the McCarran–Ferguson Act. Therefore, I must consider the implications of Section 1213 of the New York Insurance Law, which Kaiser argues would be impaired under the McCarran–Ferguson Act if these proceedings are not dismissed.

**B. Section 1213 of New York Insurance Law**

■ This is not the first time Courts of this Circuit have considered the implications of N.Y.Ins.Law § 1213 on a foreign proceeding. *See, National Distillers,* 69 F.3d at 1234 (the McCarran–Ferguson Act does not preclude the preempting of New York's prejudgment security requirement, N.Y.Ins.Law § 1213, by the FSIA); *In re Rubin,* 160 B.R. at 279–281 (the argument that § 304 conflicts with insurance laws, including N.Y.Ins.Law § 1213 "is nothing short of silly.").

Section 1213 [6] is primarily a long-arm statute, rooted in the Uniform Unauthorized Insurers Act. *In re Rubin,* 160 B.R. at 279. It is only one part of New York's insurance laws. Since section 1213 is primarily a long-arm statute, it should not be used in a bankruptcy proceeding to allow one creditor to gain a preference over other similarly situated creditors. If Kaiser proceeds against Kansa in the state court under section 1213, without any relief from this Court, she can convert an unsecured claim into a secured claim to the detriment of the other creditors. This violates the equitable principles of the Bankruptcy Code and the Uniform Insurers Liquidation Act.

The Bankruptcy Code allows a flexible standard for addressing international foreign bankruptcies. In *Banque De Financement, S.A. v. First Nat'l Bank,* 568 F.2d 911 (2d Cir.1977), the Second Circuit enunciated: "recognition of the fact that international

---

**6.** N.Y.Ins.Law section 1213(c)(1) provides:

Before any unauthorized foreign or alien insurer files any pleading in any proceeding against it, it shall either:

(A) deposit with the clerk of court in which the proceeding is pending, cash or securities or file with such clerk a bond with good and sufficient sureties, to be approved by the court, in an amount to be fixed by the court sufficient to secure payment of final judgment which may be rendered in the proceeding, but the court may in its discretion make a order dispensing with such deposit or bond if the superintendent certifies to it that such insurer maintains within this state funds or securities in trust or otherwise sufficient and available to satisfy any final judgment which may be entered in the proceeding, or

(B) procure a license to do an insurance business in this state.

bankruptcies can raise problems not contemplated by the [Bankruptcy] Act, and then, [the need for] some flexibility in responding to those problems consistent with the strong public policy which is at the core of the Act." *Id.* at 919. This applies equally to cases under the Bankruptcy Code, the Bankruptcy Act's successor.

Neither New York common law, nor the Uniform Insurers Liquidation Act, favors preferences. *See, Twin City Bank,* 646 F.Supp. at 1142 ("In sum, the broad policy of denying to one creditor preference over other similarly situated creditors is paramount."); *Skandia America Reinsurance Corp.,* 441 F.Supp. at 726 ("New York courts have long held that a fund arising from reinsurance treaties must be distributed pro rata among all creditors."); *Bohlinger v. Zanger,* 306 N.Y. 228, 233–34, 117 N.E.2d 338 (1954) ("Consequently, liquidation orders do not magically change the nature of debts and obligations in the ordinary case."). The principle underlying both New York law and the Uniform Insurers Liquidation Act is that the assets of insolvent insurers and reinsurers should be equitably distributed among their creditors.

It is philosophically inconsistent with New York Insurance Law that Kansa should be required to post security to defend itself against the Kaiser's claim. In essence, that security would transform her unsecured claim into a secured claim to the detriment of the other U.S. creditors who are solvent or insolvent insurance companies, some of which are being liquidated by state insurance commissioners. Kaiser, however, may continue the prosecution of her claim in the New York Supreme Court, without requiring the Kansa Companies to post security. The equities in this case, as well as applicable law, require that I maintain jurisdiction over these proceedings. Under these facts, Section 304 of the Bankruptcy Code is consistent with New York Insurance Law, the Uniform Insurers Liquidation Act and the McCarran–Ferguson Act.

Since I find that I can, and should, retain jurisdiction, I need not address the issue of abstention further.

## III. Section 304 and the April motion for Preliminary Injunction

On April 5, 1995, I signed a consent order granting a limited preliminary injunction against all parties served, except Kaiser and Integrity. I stayed actions against Kansa, except I allowed pending litigations and arbitrations to continue to judgment, but not enforcement, provided that of the Kansa Companies neither be required to provide nor post additional security in connection with or as a condition of continuing the proceeding, allowed business in its ordinary course to continue, and restrained Kansa from moving their assets.

In determining whether to grant a preliminary injunction against Kaiser, as allowed under section 304(b), I must consider the criteria set forth in section 304(c). Of the six factors, only five are relevant here:

1) just treatment of all holders of claims against or interests in such estate;

2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

3) prevention of preferential or fraudulent dispositions of property of such estate;

4) *distribution of proceeds of such estate substantially in accordance with the order prescribed by this title;*

5) comity.

11 U.S.C. § 304(c).

Effectively, Kaiser was stayed from further prosecution of her action pending the determination of this motion to dismiss. It is not necessary to further enjoin her from proceeding in New York Supreme Court, so long as the Kansa Companies are not required to post additional security in order to litigate.

Granting this injunction will aid the Finnish Court in achieving equity for all creditors. *See, Banque De Financement, S.A. v. First Nat'l Bank,* 568 F.2d 911 (allowing creditors to seek immediate attachment in United States courts is against the goal of United States and international bankruptcy law to preserve assets for the equitable distribution for all creditors wherever located). "The

guiding premise of the Bankruptcy Code is the equality of distribution of assets among creditors." *In re Rubin,* 160 B.R. at 281 (citations omitted). The prejudice and inconvenience of which Kaiser complains are typical of what every foreign creditor in a sizeable domestic case encounters when forced to litigate its claim in this jurisdiction. *Id.* at 282; *See also, In re Petition of Brierley,* 145 B.R. 151, 163 (Bankr.S.D.N.Y.1992). However, by permitting her to litigate in the New York Courts, I am permitting her to liquidate her claims in a convenient forum, a substantial advantage over her other option, litigating in Finland.

Before granting section 304 relief, I must compare our liquidation scheme with Finland's. Finland has bankruptcy laws that provide a comprehensive and orderly procedure for liquidation in bankruptcy proceedings. The Helsinki District Court of the Republic Finland, which is supervising the Kansa cases, has judges who hear only bankruptcy cases. *Declaration of Risto K. Ovaska in Support of Petitioners' Request for Relief under Section 304 of the U.S. Bankruptcy Code,* at 3 (No. 95–40385).[7] Upon the commencement of the bankruptcy case in Finland, the debtor forfeits control of all property and possessions of the estate. *Id.* at 4. Interim receivers and administrators are empowered to take all actions necessary to protect the estate and maximize its value. The Finnish bankruptcy procedures are designed to maximize the value of the estate of the debtor. *Id.* at 5.

In addition, Finnish law is designed to recapture preferences and fraudulent conveyances for the creditors, to preserve secured interests and to treat unsecured claims fairly and equitably on a pro rata basis. *Id.* at 3. Finnish law also provides for the orderly filing of proofs of claims. *Id.* at 6. Based on the Ovaska Declaration, I find that Finnish Bankruptcy law is similar to U.S. Bankruptcy law.

Lastly, I must consider whether I should grant comity to the foreign proceeding. As long as the laws of Finland are not repugnant to our own, there is a judicial preference to defer to that proceeding. *Brierley,* 145 B.R. at 168. "Comity should be withheld only when its acceptance would be contrary or prejudicial to the interests of the nation called upon to give it effect." *In re Rubin,* 160 B.R. at 283 (*citing, Cunard,* 773 F.2d at 457 (citation omitted)).

Comity is not an imperative or obligation,' "[r]ather, it is a nation's expression of understanding which demonstrates due regard both to international duty and convenience and to the rights of persons protected by its own laws." *In re Rubin,* 160 B.R. at 283. In this case, Finnish bankruptcy law is consistent with our bankruptcy law and comity should be granted in the best interests of the estates and the creditors. Here, the Finnish Court can best assure an economical and expeditious administration of the Kansa Companies' estates. Consistent with my previous rulings, I find that a limited preliminary injunction is appropriate here.

### IV. Conclusion

The motion to dismiss is denied. The motion for the preliminary injunction is granted to the extent set forth in this opinion. This ruling is consistent with my April 5, 1995 Order.

Settle order.

---

7. The Declaration of Risto K. Ovaska was submitted in support of the Kansa Companies petition and requested relief. No party in this proceeding has contested this declaration or submitted another declaration.