**In re Petition of Colin Graham BIRD & Paul Anthony Brereton Evans, as Joint Provisional Liquidators of North Atlantic Insurance Company Limited, f/k/a British National Life Insurance Society Limited and British National Insurance Company Limited Debtor in Foreign Proceeding.**

**No. 97–B–41602 (TLB).**

United States Bankruptcy Court, S.D. New York.

July 9, 1998.

---

**231**

Shearman & Sterling by Ronald DeKoven, New York City, for Northwestern National Insurance Company.

Cadwalader, Wickersham & Taft by Kenneth P. Coleman, New York City, for Provisional Liquidators.

Jones, Day, Reavis & Pogue by Thomas H. Sear, New York City, for Sherwin–Williams Company.

Werbel & Carnelutti, P.C. by Joann Berardo Birle, New York City, and Covington & Burling by John G. Buchanan III, Washington, DC, for Certain Member Companies of the International Policyholders' Association.

Kirkpatrick & Lockhart LLP by Eugene R. Licker, New York City, for CBS Corporation.

Mound, Cotton & Wollan by Michael H. Goldstein, New York City, for Continental Insurance Company.

Abrams & Martin P.C. by Martin I. Nagel, New York City, for American Mutual Reinsurance Company.

Richards Butler by Mark Connoly, London, United Kingdom, for Joint Provisional Liquidators.

Eric S. Kobrick, Assistant General Counsel, New York City, for American International Group, Inc.

## DECISION ON MOTION TO MODIFY PRELIMINARY INJUNCTION, OR IN THE ALTERNATIVE, RECONSIDER THE MARCH 12 RULING

JEFFRY H. GALLET, Bankruptcy Judge.

Northwestern National Insurance Company ("Northwestern") moves pursuant to §§ 105(a) and 304 of Title 11 of the United States Code, and the Bankruptcy Code (the "Code") to modify the preliminary injunction entered by Chief Judge Tina L. Brozman on April 15, 1998 (the "Order"), or, in the alternative, reconsider my bench ruling of March 12, 1998 (the "March 12th Ruling"). Northwestern seeks a modification to permit it to commence third-party actions against North Atlantic Insurance Company (the "Debtor"), its officers and directors with respect to certain contracts of insurance or reinsurance that Northwestern maintains were assumed by, or novated to, a predecessor of the Debtor pursuant to various agreements entered into between 1978 and 1980.[1] For the reasons set forth below, Northwestern's motions to modify the Order and, in the alternative for reconsideration, are denied.

### BACKGROUND

The Debtor is in a "winding up" in England, pursuant to the Insolvency Act of 1986, under the supervision of the High Court of Justice, Chancery Division, Companies Court (the "High Court"). The High Court appointed Colin Graham Bird and Paul Antho-

---

1. Normally, a motion to modify an order is heard by the judge who issued the order. Here, because the motion to modify and the motion to reargue implicate many of the same facts and arguments, I heard both branches of Northwestern's motion with Chief Judge Brozman's agreement.

ny Brereton Evans as joint provisional liquidators (the "Joint Liquidators").

The Joint Liquidators filed a petition in this court pursuant to § 304 of the Code. They successfully sought a preliminary injunction to enjoin at least forty-seven lawsuits pending against the Debtor in the United States. Chief Judge Brozman has extended the preliminary injunction semiannually since, the most recent time being by the Order.

Northwestern, a Wisconsin property and casualty insurance company, is currently in runoff. It has ceased writing business other than certain accident and health policies.

Bellefonte Insurance Company ("Bellefonte") was a property and casualty insurer whose business consisted of three primary components: (i) business written through United Kingdom brokers ("U.K. Branch Business"), (ii) business written through United States brokers ("U.S. Business") and (iii) business written through other brokers. In December 1979, Armco Equity Corporation, an affiliate of Bellefonte, acquired the Debtor's predecessor, British National Life Insurance Society ("BNLIS"). Subsequently, in 1979 and 1980, Bellefonte and BNLIS entered into several transfer agreements that, Northwestern contends, transferred all of the Bellefonte U.K. Branch Business to BNLIS (the "Transfer Agreements").

In 1983, Bellefonte's U.S. Branch Business was merged into Universal Reinsurance Corporation ("Universal"). In 1992, Universal merged with Northwestern. The net result of these mergers and transfers appears to be that Bellefonte's U.K. Branch Business ended up with the Debtor and the U.S. Business with Northwestern.

To secure its obligations under the Transfer Agreements, BNLIS posted security by letters of credit and a trust established under New York law on March 29, 1982 among Bellefonte, BNLIS and the Chase Manhattan Bank, as trustee. They modified the trust in 1986 to replace the letters of credit with a second trust set up under New Jersey law among these parties except that Midlantic National Bank was the trustee. They intended the trusts to provide security for

payment to Bellefonte or its successors of amounts for the U.K. Branch Business called for in the Transfer Agreement if the Debtor, or its predecessors, was unable or unwilling to pay. Northwestern believes that the trusts are currently underfunded.

From the effective date of the Transfer Agreements until the commencement of the Debtor's liquidation, the Debtor paid the claims that the trust covered. It also administered the policies, defended the claims and paid out claims relating to the U.K. business directly to policyholders. Finally, the Debtor apparently bore the burden of engaging and paying counsel to direct the defense of numerous proceedings brought by policyholders in the United States against Bellefonte.

This procedure changed when the Debtor filed for liquidation. The Joint Liquidators have taken the position that the estate can no longer afford to deplete its assets to defend actions brought against Bellefonte in the United States. This stance has led to disputes with Northwestern over the terms of the Transfer Agreements regarding whether the Debtor assumed liability for the U.K. Branch Business and whether that business was novated to BNLIS, the Debtor's predecessor.

If a novation and assumption did occur, then the Debtor will be wholly liable to Bellefonte policyholders and Northwestern will not be liable to them. If no novation occurred, then Northwestern and the Debtor will have a reinsurance relationship and Northwestern will have to pay the claims and seek reimbursement from a potentially insolvent Debtor. It is important to note that as far as the Joint Liquidators are concerned, neither finding affects the Debtor's liabilities. The only change will be in the identity of the estate's creditors, either Northwestern or individual policyholders.

Successfully proving a novation certainly changes Northwestern's financial picture. If it establishes a novation, Northwestern will pay nothing to anyone. The entire liability is the Debtor's. If it fails to sustain a novation, it must pay the claims and look to the Debtor for repayment, to the extent money is available.

The rub is that the novation issue must be decided policy by policy. Despite the intent of the insurance companies, each policyholder must have consented to the primary financial responsibility under the policy being changed. Significantly, Northwestern's comprehensive and well done moving papers omit any documents or persuasive evidence that any policyholder has agreed to removal of Northwestern as a financially responsible party.

It may be that somewhere, or somehow, Northwestern can be successful in its novation theory. It is not, however, clear to me where or when. What is clear is that if I grant this motion, I will put the Debtor to considerable expense to defend more than twenty law suits and the policyholders claiming against Northwestern will be substantially delayed in having their claims resolved.

In my March 12th Ruling, I denied the joint request of Northwestern and the Joint Liquidators to extend the preliminary injunction over Northwestern until the dispute regarding novation and assumption is resolved. To have granted the motion would have been grossly unfair to Northwestern's claimants. Northwestern now seeks modification of the preliminary injunction so that it may commence third-party actions against the Debtor, and its former officers and directors to determine whether certain contracts were assumed by or novated to the Debtor, and seeking appropriate damages for fraudulently failing to effect a novation. It is undisputed that as many as twenty-eight lawsuits involving the U.K. Branch Business name Northwestern and Bellefonte as defendants. Northwestern also seeks reconsideration of my March 12th Ruling denying it a stay of the outstanding suits against it.

The Joint Liquidators and several claimants against Northwestern oppose the motion.

## DISCUSSION

A. *Northwestern's Motion for Modification of the Order*

 Section 304 of the Code provides a mechanism for United States courts to aid foreign bankruptcy proceedings and accom-modate the extraterritorial effect of these proceedings within the United States. *Universal Casualty & Surety Co., Ltd. v. Gee (In re Gee)*, 53 B.R. 891, 896 (Bankr.S.D.N.Y. 1985). The purpose of a filing under § 304 is to prevent piecemeal distribution of assets in the United States by means of legal proceedings initiated in domestic courts by local creditors. *In re Rubin*, 160 B.R. 269, 274 (Bankr.S.D.N.Y.1993) (*citing In re Koreag, Controle et Revision S.A.*, 961 F.2d 341, 348 (2d Cir.), *cert. denied*, 506 U.S. 865, 113 S.Ct. 188, 121 L.Ed.2d 132 (1992)). To administer assets in the United States and prevent local creditors from dismembering assets located here, the representative of a foreign debtor may commence a proceeding pursuant to § 304 and need not file a petition for relief under chapters 7 or 11. *Cunard S.S. Co. Ltd. v. Salen Reefer Servs. AB*, 773 F.2d 452, 454–55 (2d Cir.1985). This remedy is intended to be broad and flexible. *Id.* at 455. In addition, " 'a 304 case is a limited one, designed to function in aid of a proceeding pending in a foreign court.' " *In re Shavit*, 197 B.R. 763, 766 (Bankr.S.D.N.Y.1996) (*quoting In re Gee*, 53 B.R. at 896). Indeed, the foreign court which presides over the original proceeding is in the best position to assess where and when claims should be liquidated so as to conserve estate resources and maximize the assets available for distribution. *See In re Gercke*, 122 B.R. 621 (Bankr.D.C.1991).

 Pursuant to § 304(b), the court has the power to enjoin the commencement or continuation of any action against a debtor in a foreign proceeding or any property involved in that proceeding. The injunctive relief available under § 304(b) is "not unlike the injunction which is automatic in a chapter 7 or 11 case pursuant to Section 362 of the Code." *In re Banco Nacional de Obras y Servicios Publicos, S.N.C.*, 91 B.R. 661, 664 (Bankr.S.D.N.Y.1988). Section 304(b) also provides that the court may order additional relief as it deems appropriate. This language reflects Congress's intent to provide maximum flexibility to confront the multitude of complex and unforeseen problems associated with international insolvencies. *In re Gee*, 53 B.R. at 896–97. It allows the court

to grant relief in a "near blank check fashion." *In re Culmer,* 25 B.R. 621, 624 (Bankr. S.D.N.Y.1982). As a result, a court may modify a preliminary injunction under § 304 where the modification is necessary to protect the interests of the estate. *See In re Treco,* 205 B.R. 358, 361 (S.D.N.Y.1997)

■ However, § 304 is not intended to be an exclusive remedy for a foreign debtor. The statute is not phrased in mandatory or exclusive terms and Congress appears to have so intended. *See Cunard S.S. Co. Ltd.,* 773 F.2d at 455–56 (*citing* S.Rep. No. 989, 95th Cong., 2d Sess. 35 and H. Rep. No. 595, 95th Cong., 2d Sess. 324) ("the foreign representative may file a petition under this section").[2]

■ Northwestern argues that since I denied its previous motion on March 12, actions against the U.K. Branch business have continued unabated, potentially exposing Northwestern to substantial liability. Moreover, Northwestern contends that it has recently discovered that it may have massive fraud claims against the Debtor, its officers and directors that it maintains that it should be permitted to assert in each of the actions now pending against it. Northwestern does not say when it made this discovery or exactly what it discovered. I note that Northwestern did not argue this to Chief Judge Brozman in connection with the Order. Nonetheless, it avers that successful prosecution of these actions would permit it to avoid a potential loss of reinsurance proceeds and avoid exhausting its $15 million fidelity bond. To do so, Northwestern contends it must involve the Debtor in those lawsuits in order to estop the Debtor from relitigating the novation issue in this court if Northwestern succeeds in arguing that the contracts at issue were novated. Finally, Northwestern argues that if I do not modify the preliminary injunction, it will be severely prejudiced because it will be unable to obtain discovery from the Debtor to litigate these issues in each of the proceedings.

The opposition centers around the fact that Northwestern has not provided any new information or evidence to show that cause exists to modify the preliminary injunction. Specifically, they argue that the fraud claims are tenuously woven without any supporting evidence. In addition, if I modify the injunction, the Joint Liquidators point out that at least twenty-eight actions will require the Debtor's participation and that the universe of policies at issue maybe as many as 82,000. To date, claims have been asserted under 4,000 policies. To grant Northwestern the relief it requests, the Joint Liquidators argue, would be to eviscerate the injunction while permitting Northwestern to avoid its own liabilities to its policyholders. It would also be hugely expensive to the Debtor's estate in the United Kingdom and require a substantial allocation of the estate's limited resources.

The Northwestern claimants add that granting the motion would unreasonably delay their actions against Northwestern. They point out that to prove a novation, Northwestern has to prove the claimant's consent. They argue that there has been no showing that this happened in any case. Either lifting or extending the injunction will unquestionably delay the adjudication of their claims against Northwestern.

Northwestern, after my March 12th Ruling, had the opportunity to ask Chief Judge Brozman to modify her injunction when she extended it in mid-April.[3] It is not clear that they discovered anything new since then. Clearly, granting the motion will embroil the Debtor in the numerous suits in which Northwestern is already a defendant. That fact, which underlies both my March 12th Ruling and Chief Judge Brozman's Order, remains unchanged.

---

**2.** A foreign insurance company may be the subject of an ancillary proceeding under § 304 of the code, even if it has engaged in the insurance business in the United States. *See In re Laitasalo,* 193 B.R. 187 (Bankr.S.D.N.Y.1996); *In re Rubin,* 160 B.R. 269 (Bankr.S.D.N.Y.1993); *In re Lines,* 81 B.R. 267, 270–71 (Bankr.S.D.N.Y. 1988).

**3.** It is not clear on the record before me whether Northwestern declined to argue for the change before Chief Judge Brozman or if it was unsuccessful.

Northwestern offers no basis for its claim that adding new theories of fraud, massive or not, against the Debtor and its principals is cause for modifying the preliminary injunction or that the motion is based on evidence discovered following Judge Brozman's last hearing. Its allegations of "massive" fraud by the Debtor and its officers and directors are unsubstantiated. In any event, Northwestern may pursue any causes of action it has against the Debtor's officers and directors. Judge Brozman's injunction excludes them from its ambit. That part of Northwestern's motion is denied as moot.

Northwestern claims that relevant information regarding the novation issue may lie in the hands of brokers employed by the Debtor and over whom the Debtor may exercise control. The Joint Liquidators counter that the injunction does not protect those brokers from complying with discovery requests. Further, Northwestern has declined to accept the Debtor's offer of informal inspection of its books and records. To the extent that discovery is an issue, Northwestern may move this court for specific relief.

The final argument that Northwestern offers is that it will suffer irreparable harm if the preliminary injunction is not lifted. Northwestern will have to expend considerable resources defending actions in which it believes it is not a proper defendant and would have to institute an adversary proceeding against the Debtor with respect to each lawsuit concerning the U.K. Branch Business in which Bellefonte or Northwestern is named to seek a determination whether liability for the underlying insurance policy had been assumed or novated.

■ The purpose § 304 is to protect the debtor and its estate, not to protect nondebtor parties. Northwestern seems to have overlooked the fact that it is the Debtor, not Northwestern, that filed for protection. Northwestern continues to believe that the Debtor should expend its limited resources to preserve Northwestern's assets, at the expense of the Debtor's creditors. Northwestern is seeking to protect its own assets by compelling the Debtor to expend its assets to defend itself in the various actions in which Northwestern is a defendant.

## B. Northwestern's Motion for Reconsideration of My March 12th Ruling

■ Northwestern seeks, in the alternative, reconsideration of my March 12th Ruling because I failed to address the potential harm to Northwestern if it is ultimately unable to collect from reinsurance proceeds, which, it contends, would be threatened if there are inconsistent resolutions of the novation issue in different fora.

■ Reconsideration under Fed. R.Civ.P. 59(e), made applicable here by Bankruptcy Rule 9023, is merited when there has been a clear error or manifest injustice in an order of the court or if newly discovered evidence is unearthed. *See Doe v. New York City Dep't of Soc. Servs.*, 709 F.2d 782, 789 (2d Cir.), *cert. denied*, 464 U.S. 864, 104 S.Ct. 195, 78 L.Ed.2d 171 (1983). To prevail, the movant must show that the court overlooked factual matters or controlling precedent "that might have materially influenced its earlier decision." *Robins v. Max Mara, U.S.A., Inc.*, 923 F.Supp. 460, 473 (S.D.N.Y. 1996). This criterion is strictly construed against the moving party. *See Monaghan v. SZS 33 Assocs., L.P.*, 153 F.R.D. 60, 65 (S.D.N.Y.1994); *New York News Inc. v. Newspaper & Mail Deliverers' Union*, 139 F.R.D. 294, 294–95 (S.D.N.Y.1991), *aff'd sub nom, New York News Inc. v. Kheel*, 972 F.2d 482 (2d Cir.1992).

■ A motion to reconsider should not give the moving party another bite at the apple by permitting argument on issues that could have been or should have been raised prior on the original motion. *Federal Deposit Ins. Corp. v. Meyer*, 781 F.2d 1260, 1268 (7th Cir.1986). A motion for reconsideration is not a "forum for new theories or for 'plugging the gaps of a lost motion with additional matters.'" *CMNY Capital, L.P. v. Deloitte & Touche*, 821 F.Supp. 152, 162 (S.D.N.Y. 1993).

Northwestern argues that reconsideration is proper because during the March 12th hearing I failed to take into account the possible competing claims to certain reinsurance proceeds. Northwestern asserts that because I read from a prepared decision I

might have overlooked the import of this situation because it developed it during oral argument.

There is a persisting courthouse myth that no matter how alert they may appear, and no matter how active they may be during oral argument, judges do not listen to the presentations of counsel. As I told counsel at oral argument of this motion, there is at least a rebuttable presumption that the judge is paying attention. Here, I was quite active during argument. The transcript shows that I asked scores of questions throughout the extensive oral argument, including during Northwest's counsel's argument about the reinsurance issue. Northwest's counsel should not assume that I did not adopt his arguments because I failed to listen to them or understand them. Rather, he may be assured that I declined to credit his arguments because he did not persuade me that he was right.

I did consider Northwestern's arguments though I may not have alluded to them directly in my March 12th Ruling. Indeed, as the record shows, after oral argument at the March 12th hearing, I retired to chambers to consider the oral argument. I understood Northwestern's argument and rejected it.

Northwestern's concern about inconsistent rulings about whether a novation or assumption occurred is an inherent difficulty with that issue. As I discussed in my ruling, determining whether novation occurred involves resolving whether each individual policyholder consented to it. *See Colonial Penn Ins. Co. v. American Centennial Ins. Co.,* No. 96 Civ. 6051(MBM), 1997 WL 10004 (S.D.N.Y.) (*citing Beck v. Manufacturers Hanover Trust Co.,* 125 Misc.2d 771, 481 N.Y.S.2d 211 (Sup.Ct.1984)) ("It is hornbook law that any transfer of contractual duty so as to discharge the original obligor, requires the obligee's assent where such transfer alters the substance of the contract or otherwise materially affects the obligee's rights"), *aff'd,* 133 F.3d 906 (2d Cir.1997). Whether a novation has in fact occurred is a factual question, the resolution of which depends on all the circumstances. *French Am. Banking Corp. v. Flota Mercante Grancolombiana, S.A.,* 609 F.Supp. 1352, 1358 (S.D.N.Y.1985).

Consequently, Northwestern must overcome the hurdle in each individual action that the policyholder consented to the novation before it can seek to shift primary liability to the Debtor. There is no reason to assume that it can do so in all or any of the cases. The movant is unpersuasive on that issue.

The preliminary injunction does not operate to bar Northwestern and the Debtor from agreeing on how to treat those claims between themselves. In the three months since my ruling, neither the Debtor nor Northwestern has sought to set up a mechanism to handle disputes regarding discovery, novation, or the collection of reinsurance proceeds. Granting this motion would substantially delay those Northwestern claimants who wish to pursue their claims, to their clear detriment. It would also cause the very harm to the Debtor the Order was designed to avoid.

## CONCLUSION

Therefore, Northwestern's motions for modification of the preliminary injunction and for reconsideration are denied.

Settle Order.