**In re Petition of Alain RUKAVINA, Receiver of ITM International, S.A. (In Liquidation), Debtor in a Foreign Proceeding.**

Bankruptcy No. 97 B 42068(JLG).

United States Bankruptcy Court,
S.D. New York.

Dec. 1, 1998.

Nixon, Hargrave, Devans & Doyle, LLP, New York City, for petitioner.

Otterbourg, Steindler, Houston & Rosen, New York City, for Bank of New York and JCPL Leasing Corp.

### *DECISION ON PETITIONER'S MOTION FOR A PRELIMINARY INJUNCTION*

JAMES L. GARRITY, Jr., Bankruptcy Judge.

Alain Rukavina (the "Petitioner"), as the Official Receiver of ITM International S.A. (In Liquidation) ("ITM"), seeks an order preliminarily enjoining all persons and entities from (i) transferring, relinquishing or disposing of any of the property of ITM in the United States, or the proceeds of any such property, except to or by the Petitioner, (ii) commencing or continuing any judicial, administrative or regulatory action against ITM or its property in the United States, or the proceeds of any such property, (iii) en-

forcing, and/or taking any action preliminary to the enforcement of, any judicial, quasi-judicial, administrative or regulatory judgment against ITM or its property in the United States, or the proceeds of any such property, and (iv) performing any act to create, perfect or enforce any lien, right to set-off or recoupment, or other claim against ITM or any of its property in the United States, or the proceeds of any such property. ITM is among the defendants in an action pending on behalf of the Bank of New York and JCPL Leasing Corp. (collectively, "BNY") in the United States District Court for the Southern District of New York. Petitioner seeks to enjoin BNY from prosecuting that action against ITM. BNY opposes the motion. We grant it.

## Facts

The facts are not in dispute. ITM is a holding company incorporated under the laws of Luxembourg. Among other things, it owns 100% of Meridian International Bank Limited (In Liquidation) ("Meridien International"), which in turn, owns a 74% interest in Meridien BIAO S.A. (In Liquidation) ("Meridien BIAO"), another Luxembourg corporation. Meridien International is the subject of a liquidation proceeding in the Bahamas and an ancillary proceeding in this court. ITM claims that it owns 90% of Meridien Aviation S.A.Z.F. ("Meridian Aviation"), a Djibouti corporation. By judgment dated July 7, 1995 (the "Order"), the District Court of Luxembourg for commercial matters (the "Luxembourg Court") declared ITM bankrupt under Articles 440 and 442 of the Luxembourg Commercial Code (the "Luxembourg Proceeding") and appointed Petitioner as ITM's Receiver.

On or about June 28, 1995, BNY commenced a lawsuit in the United States District Court for the Southern District of New York (the "BNY Action") against, among others, the Deposit Insurance Board, as assignee of Meridien BIAO Bank Tanzania Limited ("Bank of Tanzania"), Meridien BIAO, Meridien International, Meridien Aviation and ITM. As amended, the complaint contains four causes of action. The first and second claims seek the same relief, but on different theories. In those claims, BNY seeks a judgment that as between itself and the Bank of Tanzania, it is entitled to retain, in satisfaction of indebtedness to it, $15,150,000 in a bank account Meridien BIAO pledged as security. The third and fourth claims for relief are in the nature of interpleader pursuant to Fed.R.Civ.P. 22 and for declaratory judgments respecting, among other things, two airplanes (the "Aircraft") formerly leased by Zambia Airways Corporation Limited ("Zambia Airways") from Meridien Aviation.[1]

In support of its third claim for relief, BNY alleges, among other things, that in 1988, Meridien Aviation acquired the Aircraft with funds that it borrowed from Irving Trust Company ("Irving Trust"), BNY's predecessor in interest, and simultaneously leased them to Zambia Airways. *See* Amended Complaint ¶ 55. It maintains that Meridien International guaranteed Meridien Aviation's performance under that loan, *id.*, and that as security for the loan and guarantee, respectively, Meridien Aviation pledged its stock to Irving Trust and granted it a security interest in the Aircraft and Meridien International pledged a cash collateral account it maintained at Irving Trust. *Id.* It also contends that ITM guaranteed all of Meridien Aviation's obligations to BNY. *Id.* ¶ 65. Meridien Aviation defaulted under its

---

**1.** On June 22, 1998, after trial in the BNY Action on the first and second claims for relief but before the District Court issued a decision, Bank Tanzania and BNY entered into a settlement agreement pursuant to which BNY, among other things, agreed to pay Bank Tanzania $4,000,000 plus attorneys' fees in full satisfaction of all claims. BNY made the initial installment payment in August of 1998. In connection with that settlement, Bank Tanzania, pursuant to an Assignment dated June 22, 1998, assigned all of its rights, by way of subrogation and as beneficiary of any constructive trust, against Meridien Inter-

national in and to (a) the Aircraft and spare parts and any proceeds thereof, (b) bank accounts maintained by Meridien International at BNY, (c) Bank Tanzania's cross-claims, if any, against Meridien International in the BNY Action, (d) any of Bank Tanzania's rights and claims for contribution, reimbursement, indemnification, exoneration or otherwise against any other person or entity obligated in whole or in part for Meridien International's obligations, and (e) claims against guarantors relating to any of the foregoing.

loan. *Id.* ¶ 56, 61. BNY liquidated Meridien International's pledged account in partial satisfaction of Meridien Aviation's indebtedness, but contends that Meridien Aviation owes it more than $1 million. *Id.* ¶ 58. BNY is in possession of the Aircraft and has been authorized to sell them. It alleges that to the extent Meridien Aviation, or its shareholders, would be entitled to any proceeds from the sale of the Aircraft, BNY should be permitted to apply them in satisfaction of the ITM's liability under its guarantee. *Id.* ¶ 65. As to Meridien Aviation and ITM, BNY seeks a judgment that the allegations in its complaint are true and that ITM and Meridien Aviation have no rights to, or interests in, the Aircraft or their proceeds.

BNY commenced the BNY Action on or about June 28, 1995. ITM and Meridien Aviation received copies of the Summons and Complaint on July 10 and 11, 1995, respectively. BNY amended its complaint and on July 26, 1996, ITM and Meridien Aviation received copies of the Amended Summons and Amended Complaint. They neither answered nor otherwise moved as to the Amended Complaint, notwithstanding that BNY extended their time to do so. The Clerk of the District Court entered defaults against ITM and Meridien Aviation on December 31, 1996, and on or about January 2, 1997, the District Court executed an Order to Show Cause for entry of a default judgment against them. On February 19, 1997, ITM and Meridien Aviation cross-moved in District Court to vacate the Clerk's Entry of Default. On March 5, 1997, BNY's motion and ITM and Meridien Aviation's cross-motion were fully briefed in the District Court and the court fixed a return date on the motion for April 28, 1997.

On April 1, 1997, Petitioner commenced this ancillary proceeding under § 304 of the Bankruptcy Code. On April 3, 1997, he filed an Order to Show Cause seeking entry of a preliminary injunction enjoining all persons and entities from (i) transferring, relinquishing or disposing of any of the property of ITM in the United States (including its subsidiary Meridien Aviation or its property), or proceeds of any such property, except to or by the Petitioner, (ii) commencing or continuing any judicial, administrative or regulatory action against ITM or its property in the United States (including as against Meridien Aviation or its property), or the proceeds of any such property, (iii) enforcing, and/or taking any action preliminary to the enforcement of, any judicial, quasi-judicial, administrative or regulatory judgment against ITM or its property in the United States (including as against Meridien Aviation or its property), or the proceeds of any such property, and (iv) performing any act to create, perfect or enforce any lien, right to set-off or recoupment, or other claim against ITM or any of its property in the United States (including as against Meridien Aviation or its property), or the proceeds of any such property.

In the application accompanying his Order to Show Cause, Petitioner explains that he is seeking "immediate relief pending [a] determination of the Petition" because the BNY Action is "significant litigation pending against ITM and Meridien Aviation in the United States which has proceeded to a precipitous junction as to each entity." Christmas Aff. ¶ 4.[2] He further explains that in the BNY Action, BNY seeks, among other things, a declaration of various parties' rights to the proceeds of the sale of the Aircraft, that BNY is seeking a default judgment against ITM and Meridien Aviation, and that if we do not enjoin that litigation, BNY or other parties may obtain judgment against ITM and/or Meridien Aviation which they will seek to satisfy from ITM's property (*i.e.*, the Aircraft), and if that were to occur, "local United States creditors would be preferred at the expense of ITM's estate and its entire creditor body, contrary to the purpose of the Luxembourg Proceeding as well as the policies behind Section 304 of the Bankruptcy Code." *Id.* at ¶ 5. Moreover, he contends that although Meridien Aviation itself is not a party to the § 304 proceeding,

> [a]s the majority owner of Meridien Aviation, ITM will suffer irreparable harm un-

---

**2.** "Christmas Aff." means the Affidavit of Robert N.H. Christmas, Petitioner's counsel, pursuant to Local Rule 9077–1(a).

less litigation against both ITM and Meridien Aviation is enjoined. [BNY's] efforts to default Meridien Aviation in the BNY Action would, if permitted to proceed, deprive ITM's estate of the possible surplus from sale of the Aircraft that Meridien Aviation would obtain after payment of valid claims on the Aircraft and their proceeds. Hence, if the BNY Action is permitted to proceed, the value of Meridien Aviation to ITM's estate would be irretrievably lost, and [BNY] and/or other parties to the BNY Action would gain a windfall.

*Id.* at ¶ 7. BNY opposed the motion. We heard argument on the motion on April 15, 1997 and denied it on April 25, 1997. The Petitioner timely appealed our determination, and on or about May 16, 1997, the District Court remanded the matter to us for further findings of fact and conclusions of law on the § 304 application. In doing so, the court stayed its consideration of the cross-motions pending our further review of Petitioner's motion. The parties then engaged in protracted, but unsuccessful negotiations in an effort to resolve their many disputes.

In July 1998, the Petitioner advised the District Court that Meridien Aviation disclaimed any entitlement to a § 304 injunction and agreed to withdraw his request herein for that relief. Petitioner so advised us, and on July 22, 1998, the District Court issued its Opinion and Order granting BNY's motion for entry of a default judgement against Meridien Aviation and denying Meridien Aviation's cross-motion to vacate the default. On or about August 12, 1998, the court granted BNY judgment against Meridien Aviation declaring, among other things, that "[Meridien] Aviation [is] subordinated to [BNY's] interests and priority as to the interpleaded [Aircraft], and the proceeds thereof...." *See* Order regarding Default Judgment against Defendants Meridien BIAO, S.A. and Meridien Aviation S.A.Z.F., dated August 12, 1998 (the "August 12 Order"), p. 1.

### Discussion

We base our jurisdiction of the subject matter of this contested matter on 28 U.S.C. §§ 1334 and 157 and the "Standing Order of Referral of Cases to Bankruptcy Judges" of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). This is a core proceeding. *See* 28 U.S.C. § 157(b)(2)(A).

Pursuant to § 304(a) of the Bankruptcy Code, "[a] case ancillary to a foreign proceeding is commenced by the filing with a bankruptcy court of a petition under [§ 304] by a foreign representative." 11 U.S.C. § 304(a). In part, § 304(b)(1), authorizes us to enjoin the commencement or continuation of

(A) any action against—

(i) a debtor with respect to property involved in such foreign proceeding; or

(ii) such property; or

(B) the enforcement of any judgment against the debtor with respect to such property, or any act or the commencement or continuation of any judicial proceeding to create or enforce a lien against the property of such estate[.]

11 U.S.C. § 304(b)(1). In determining whether to grant injunctive relief, we are "guided by what will best assure an economical and expeditious administration" of a foreign debtor's estate consistent with the specific criteria delineated in § 304(c). *See* 11 U.S.C. § 304(c). Five of those factors are relevant here:

(1) just treatment of all holders of claims against or interest in such estate;

(2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;

(3) prevention of fraudulent dispositions of property of such estate;

(4) distribution of proceeds of such estate substantially in accordance with the order prescribed by title 11; and

(5) comity.

11 U.S.C. § 304(c).[3]

BNY does not dispute that the Luxembourg Proceeding is a foreign proceeding, *see*

---

**3.** The final element of § 304(c) is inapposite because it concerns "provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns." 11 U.S.C.

11 U.S.C. § 101(23), and that Petitioner is a "foreign representative." *See* 11 U.S.C. § 101(24). It concedes that the relief Petitioner is seeking falls within the scope of § 304(b), and for purposes of this motion, does not challenge Petitioner's assertion that the Luxembourg Proceeding satisfies § 304(c), because local creditors will be justly treated and protected from prejudice in that proceeding. Nonetheless, BNY contends that we must deny this motion because:

1. Bankruptcy Rules 1018 and 7001 require that ITM commence an adversary proceeding to obtain the injunctive relief it is seeking;

2. ITM is guilty of "unclean hands" having willfully ignored the process of the District Court and has elected its remedy to seek to prevent entry of a default by so moving the District Court and is therefore not entitled to any equitable relief; and

3. ITM is guilty of laches and is therefore not entitled to equitable relief.[4]

In July 1998, we authorized the parties to supplement their pleadings on this motion.[5] In its supplemental papers, BNY first contends that because the District Court found Petitioner's explanation for Meridien Aviation's conduct "unpersuasive" in granting BNY a default judgment and in denying Meridien Aviation's cross-motion to vacate the default, and because Petitioner relies on the same evidence opposing BNY's laches and unclean hands defenses, we should bar that opposition. *See* Haddad Supp.Aff. ¶¶ 2A, 7–9.[6] Next, it argues that because the District Court found Petitioner's assertion that Meridien Aviation has a "valid property interest" in the Aircraft ineffective to establish a sufficiently meritorious claim to avoid the entry of a default judgment, ITM cannot establish a likelihood of success on the merits of this application. *Id.* ¶¶ 2B, 10–13. It also maintains that the August 12 Order estab-

lishes that Petitioner willfully and intentionally disregarded the process of that court, and inexcusably delayed in seeking relief herein and in that court, and that as such, Petitioner cannot demonstrate, let alone assure, that there will be an economical and expeditious administration of this estate. *Id.* ¶¶ 2C, 14. Finally, it contends that given Petitioner's decision not to seek relief under § 304(b) on Meridien Aviation's behalf, he cannot show that ITM will be irreparably harmed if we do not issue a preliminary injunction, given his initial position that ITM would be irreparably harmed unless we enjoined BNY from proceeding in the BNY Action as to Meridien Aviation, and that injunctive relief would be "ineffective" unless we extended it to Meridien Aviation and ITM. *Id.* ¶¶ 2D, 18, 19.

■ We first consider BNY's procedural argument. The Petitioner seeks to enjoin the continued prosecution of "any judicial . . . action against ITM or its property in the United States" and names the BNY Action as one such action. *See* § 304 Petition ¶¶ 14, 12. Bankruptcy Rule 7001 provides generally that Part VII of the Bankruptcy Rules governs the conduct of adversary proceedings under the Bankruptcy Code. Fed. R.Bankr.P. 7001. Rule 7001(7) states that an adversary proceeding "is a proceeding . . . to obtain an injunction or other equitable relief." *Id.* Bankruptcy Rule 1018 makes certain of the Part VII Rules applicable "to proceedings relating to a contested petition commencing a case ancillary to a foreign proceeding." Fed.R.Bankr.P. 1018. Rule 7001(7) is not among those rules. Thus, the Bankruptcy Rules do not mandate that Petitioner commence an adversary proceeding to obtain the injunction he is seeking. We read § 304(b) to provide that the petition commencing the ancillary case is the "pleading" pursuant to which the foreign representative can seek injunctive relief. Although the is-

---

§ 304(c)(6). *See In re Gercke,* 122 B.R. 621, 634 (Bankr.D.D.C.1991).

**4.** BNY also initially denied that we can grant any relief on behalf of Meridien Aviation. Given Petitioner's decision not to pursue § 304 relief on Meridien Aviation's behalf, we do not address those arguments.

**5.** Contrary to BNY's assertion, we intended that both parties be permitted to supplement their pleadings.

**6.** "Haddad Supp.Aff." means Richard G. Haddad's Supplemental Affidavit in Further Opposition to Motion for Preliminary Injunction.

sue has not been directly addressed by the courts, several have granted injunctive and other relief under § 304(b) on the strength of the allegations in the underlying petition. *See, e.g., In re Bird,* 222 B.R. 229, 231 (Bankr.S.D.N.Y.1998) (noting that on the basis of § 304 petition, bankruptcy court preliminarily enjoined at least 47 lawsuits pending against foreign debtor in United States); *In re Rubin,* 160 B.R. 269, 272 (Bankr. S.D.N.Y.1993) (court enjoined creditors from bringing certain U.S. actions against debtor and its liquidators where § 304 petition sought such relief); *Universal Casualty & Surety Co. v. Gee (In re Gee),* 53 B.R. 891, 894 (Bankr.S.D.N.Y.1985) (on the basis of the § 304 petition, court issued preliminary injunction, directed turnover of property and authorized discovery); *In re Culmer,* 25 B.R. 621 (Bankr.S.D.N.Y.1982) (court granted § 304 relief where petition sought to enjoin attacking creditors and others from further proceedings as well as the creation, perfection and enforcement of any lien, and for the turnover of property).

We disagree with BNY that *Evans v. Hancock, Rothert & Bunshoft (In re Evans),* 177 B.R. 193 (Bankr.S.D.N.Y.1995), is to the contrary. In that case, certain foreign representatives ("Liquidators") of an insolvent English insurance company undergoing insolvency proceedings in England, who had commenced a § 304 proceeding in the bankruptcy court for the Southern District of New York, sought, among other things, to compel a California law firm ("Hancock") to turn over funds that it held in an escrow account located in San Francisco, California. The Liquidators sought that relief pursuant to an adversary proceeding that they commenced against Hancock in the bankruptcy court for the Southern District of New York during the pendency of the § 304 proceeding. *Id.* at 195. Hancock moved to dismiss the adversary proceeding arguing that the Liquidators must file a new ancillary proceeding in the San Francisco bankruptcy court. *Id.* Alternatively, it sought to transfer the venue of the adversary proceeding to that court pursuant to 28 U.S.C. § 1412, in the interests of justice and for the convenience of the parties. *Id.* at 196. The court denied the motion, finding that pursuant to 28 U.S.C. § 1410(c), the venue of the § 304 proceeding was properly fixed in the Southern District of New York, and that the Liquidators could sue Hancock in their "home" court to recover the escrowed funds. *Id.* at 196–197. It also held that Hancock failed to establish cause under § 1412 to transfer the venue of the adversary proceeding. *Id.* at 197–198. Thus, contrary to BNY's suggestion, the court did not consider whether the Liquidators were required to file an adversary proceeding in seeking to compel Hancock to turnover the funds. The "narrow issue" it considered was "whether the Liquidators were required to file that turnover action as an independent ancillary proceeding, in the Northern District of California, instead of as part of their pending ancillary proceeding." *Id.* at 195. Moreover, the *Evans* court granted the Liquidators a nationwide temporary restraining order on the strength of the § 304 petition. *Id. Evans* supports our conclusion that the Petitioner need not commence an adversary proceeding to enjoin continued prosecution of the BNY Action.

BNY submitted no authority to support its assertion that Petitioner's alleged "unclean hands" or "election of remedies" precludes him from obtaining relief under this motion. We know of no authority to support that assertion and, in any event, we read the District Court's decision in remanding this matter to us to reject it. During the May 16, 1997 proceedings on Petitioner's appeal of our denial of his request for a preliminary injunction, the court expressed doubt about the viability of that argument, as follows:

> It strikes me unusual for anyone to argue that a bankrupt estate effects a waiver or any party effects a waiver by litigating in court and not seeking the protection of the bankruptcy court instead. Debtors do that all the time. They litigate issues up to judgment, sometimes until the enforcement of judgment, and then walk into bankruptcy court and say stop. That is what the trustee did here.

Transcript of May 16, 1997 hearing ("May 16 Tr.") at 2:7–14. In remanding the matter to us, the District Court stated:

I make very clear, however, that one finding I am making is that there is no waiver by the trustee having pursued fighting the default before me. As I said, a debtor can seek bankruptcy. Potential debtors can wait for the last moment before they file for protection. There's no difference in my mind.

*Id.* at 5:6–11.

■ BNY argues that ITM is guilty of laches and is not entitled to a § 304 injunction because from July 1995 to June 1996, it failed to take any action regarding the original summons and Complaint, it failed to respond to the Amended Complaint by August 30, 1996, which was the date ITM and BNY agreed to extend ITM's time to respond to the Amended Complaint, and it had no intention of responding to the Complaint or the Amended Complaint until such time that it was faced with a default judgment. BNY contends that Petitioner's explanations to the District Court as to why ITM failed to respond to the Complaint and Amended Complaint, in his attempt to avoid the default judgment against ITM, are woefully inadequate and/or insufficient as a matter of law to excuse ITM's default. BNY urges that

> granting any relief to ITM would have the deleterious public policy effect of encouraging foreign liquidators to ignore the process of the United States District Courts, secure in the belief that they can sit on the sidelines for years, observe the developments, and then, at the thirteenth hour, claim a need for an urgent Section 304 injunction from a Bankruptcy Court. Surely, this was not the intent of the drafters of Section 304.

BNY Memo. at 11–12 (footnote omitted).[7] In the BNY Action, BNY demonstrated to the District Court's satisfaction that for purposes of Fed.R.Civ.P. 55(c), Meridian Aviation's default in answering the Amended Complaint is inexcusable. That finding does not mandate that we deny Petitioner's motion. Those findings apply to Meridien Aviation, not ITM. Moreover, even though ITM's actions substantially mirror those of Meridien Aviation's, the majority view is that a default

judgment cannot have estoppel effect in other proceedings. *See Abrams v. Interco Inc.,* 719 F.2d 23, 33 n. 9 (2d Cir.1983). The defense of laches may preclude the issuance of injunctive relief in an appropriate case. *See Tri–Star Pictures, Inc. v. Leisure Time Productions, B.V.,* 17 F.3d 38, 44 (2d Cir. 1994) ("Laches is an equitable defense which bars injunctive relief where a plaintiff unreasonably delays in commencing an action"), *cert. denied,* 513 U.S. 987, 115 S.Ct. 484, 130 L.Ed.2d 396 (1994); *Andersen Consulting LLP v. American Management Systems, Inc.,* No. 95 Civ. 5428, 1995 WL 510042, *3 (S.D.N.Y. Aug. 28, 1995) (plaintiff's delay in seeking injunctive relief for more than one year after it received report containing information concerning alleged copyright infringement and trade secret misappropriation and three months after it became aware of infringements was unreasonable, constituted laches and precluded finding of irreparable harm). That equitable doctrine " 'asks whether the plaintiff in asserting [it's] rights was guilty of unreasonable delay that prejudiced the defendants.' " *Indian Motocycle Associates, Inc. v. Drexel Burnham Lambert Group, Inc. (In re Drexel Burnham Lambert Group, Inc.),* 157 B.R. 532, 538 (S.D.N.Y. 1993) (quoting *Stone v. Williams,* 873 F.2d 620, 623 (2d Cir.), *cert. denied,* 493 U.S. 959, 110 S.Ct. 377, 107 L.Ed.2d 362 (1989), *vacated on other grounds,* 891 F.2d 401 (2d Cir. 1989)). Petitioner did not unreasonably delay in filing this motion. He acted immediately after he filed the petition. To the extent BNY is complaining that the Petitioner unreasonably delayed in filing the petition, we find no merit to that assertion. Like the District Court, we find that debtors frequently "litigate issues up to judgment, and walk into bankruptcy court and say stop." May 16 Tr. at 2:7–14. We disagree that granting Petitioner's motion will encourage foreign liquidators to ignore the process of courts in the United States. Under the Bankruptcy Code, "there is no mandate that a bankruptcy case be filed within a certain time". *In re Colony Square Co.,* 22 B.R. 92, 98 (Bankr. W.D.Pa.1982) (among other things, rejecting

---

7. "BNY Memo." means the Memorandum of Law of Bank of New York and JCPL Leasing Corp. in Opposition to Motion for Preliminary Injunction.

creditor's argument that chapter 11 petition should be dismissed based on doctrine of laches) (quoting *In re Eagson,* 1 B.R. 777, 779 (Bankr.E.D.Pa.1980)), *rev'd on other grounds,* 29 B.R. 432 (W.D.Pa.), *appeal dismissed,* 725 F.2d 669 (3d Cir., 1983). There is no basis for treating a foreign representative filing a § 304 petition differently than a debtor under the Bankruptcy Code.

■ BNY contends that we cannot issue an injunction because Petitioner has not shown that ITM will be irreparably harmed absent an injunction. Petitioner contends that ITM will be irreparably harmed if the District Court enters a default judgment against it because BNY is "seeking judgment that it has rights superior to the [Aircraft], that enjoins ITM from taking a contrary position and that cuts off *all* of ITM's rights *even to assert claims against parties other than BNY for its share of the [Aircraft] proceeds, or to participate in proceedings to determine relative priority to that property.*" Christmas Aff. ¶ 17 (emphasis in original). He bases his assertion on the fact that after the District Court granted the default judgment, BNY submitted a proposed form of judgment embodying that relief. *Id.* ¶¶ 9, 10. However, the District Court rejected BNY's form of judgment in favor of one that the Petitioner submitted. It does not prevent Meridien Aviation from asserting claims against parties other than BNY for its share of the Aircraft proceeds. Thus, we find no merit to the Petitioner's objection. Moreover, BNY is correct that in light of Petitioner's agreement not to seek § 304 relief on Meridien Aviation's behalf, he cannot contend that ITM will be irreparably harmed if BNY obtains a default judgment against Meridien Aviation. Thus, BNY contends that we cannot grant Petitioner's motion. However, § 304 does not mention irreparable harm as a predicate for the issuance of an injunction. *See* 11 U.S.C. §§ 304(b)(c); *see also In re Rubin,* 160 B.R. at 283 (noting absence of "irreparable harm" as predicate for relief under § 304(c)). Nonetheless, to the extent that we need to find irreparable harm "there appears to be little dispute regarding the notion that the premature piecing out of property involved in a foreign proceeding constitutes irreparable injury." *In re Lines,* 81 B.R. 267, 271 (Bankr.S.D.N.Y.1988).

■ Petitioner contends that there is a stay of litigation against ITM in Luxembourg and that we should enjoin BNY from prosecuting the BNY Action against ITM because local creditors should not be treated more favorably than those in Luxembourg. Moreover, because BNY alleges that ITM, as Meridien International's guarantor, is responsible for payment of all of Meridien International's outstanding indebtedness, not merely the amounts related to the Meridien Aviation financing transaction, Amended Complaint ¶ 65, Petitioner contends that if BNY obtains a default judgment against ITM in the BNY Action, it may deprive ITM of some or all proceeds of the Aircraft after distribution to Meridien Aviation because BNY will be free to set off the proceeds which might otherwise be payable to ITM against those alleged obligations. Christmas Supp.Decl. ¶ 11.[8] For Petitioner, BNY is the classic well-funded local creditor who is seeking to further its interests in litigation in the United States to obtain a windfall if ITM defaults in the BNY Action. He argues that in opposing this motion, BNY incorrectly focuses on the fact of the entry of the default against ITM. He urges us to disregard the status of that litigation and maintains that the fact of the default should not aid BNY in opposing this motion. Otherwise, he contends, we will encourage local creditors to "race to the courthouse" in an effort to disadvantage creditors otherwise stayed in their home courts from proceeding against the foreign debtor. We find merit to those arguments and agree with Petitioner that *Victrix Steamship Co. S.A. v. Salen Dry Cargo A.B.,* 825 F.2d 709 (2d Cir.1987), supports them. In that case, Salen Dry Cargo A.B. ("Salen") was a Swedish corporation in bankruptcy in Sweden. Prior to its bankruptcy Salen entered into an agreement with Victrix Steamship Co. S.A. ("Victrix") to charter one of its vessels. The day after it filed for bankruptcy Salen advised Victrix that it would make

---

**8.** "Christmas Supp.Decl." means Robert N.H. Christmas' September 21, 1998 Supplement Declaration In Further Support Of Motion For Preliminary Injunction.

no further payments on the charter party. As per that agreement, Salen commenced an arbitration proceeding in London to recover its damages. Salen and its court appointed administrator declined to participate in the arbitration proceedings and advised Victrix that it should file a claim with the bankruptcy estate in Sweden. Victrix went forward with the arbitration and obtained a $302,-531.96 judgment. It caused a British court to enter judgment on that award. Although Salen had ample opportunity to appear and be heard in England both before and after the court entered the judgment, it declined to do so. Victrix then commenced actions in New York state and federal courts to recover against Salen and its property in the United States and obtained orders of attachment against funds in a New York brokerage account. Eventually, it moved the federal court to confirm the arbitration award and enforce the British judgment and Salen cross-moved to vacate the attachment. The district court ruled in Salen's favor and vacated the attachment. In affirming that decision, the court of appeals rejected Victrix's assertion that comity justified the enforcement of the award and judgment, finding that their enforcement "would conflict with the public policy of ensuring equitable and orderly distribution of local assets of a foreign bankrupt." *Id.* at 714. It also rejected Victrix's assertion that it waived its right to invoke the defense of bankruptcy by defaulting in the London proceedings, finding that

> [w]here purely private rights are at stake, a judgment obtained by default nevertheless merits recognition. However, different concerns bear on a case such as this one, which takes on a public character by virtue of Salen's insolvency and the institution of the Swedish bankruptcy proceeding. Any distribution of Salen's limited assets is likely to affect other creditors, not parties to the proceeding, who obeyed the Swedish court's stay and sought relief only in the bankruptcy proceeding. By attaching Salen's local assets after its declaration of bankruptcy, Victrix attempted to secure a "captive fund" to satisfy the anticipated arbitration award.... We will not aid Victrix's effort to evade the writ of the Swedish bankruptcy court.

*Id.* at 714 (citing *Cunard Steamship Co., Ltd. v. Salen Reefer Services A.B.,* 773 F.2d 452, 459 (2d Cir.1985)).

If the District Court entered a default judgment against ITM, it could seek to enjoin BNY from enforcing it and later seek to compel turnover of ITM's share of the proceeds (if any) to Petitioner for repatriation to Luxembourg and distribution in the Luxembourg Proceeding. However, the mere entry of a default judgment will affect other creditors to the extent that ITM has an interest in the proceeds and otherwise has a meritorious defense because that judgment necessarily will increase the claims against ITM and decrease the distribution to creditors of the presumably insolvent estate.

We disagree that Petitioner has not demonstrated that ITM has an interest in the Aircraft. He has submitted some evidence demonstrating that ITM is the beneficial owner of 90% of Meridien Aviation's stock. To the extent there is a surplus from the Aircraft sale, Petitioner may have a claim to it. Petitioner will not be able to demonstrate that ITM has an interest in the Aircraft until they are sold. BNY controls that process. As such, we disagree that Petitioner's present inability to prove ITM's interest in the Aircraft bars the relief he is requesting.

BNY is correct that this case is distinguishable from *Victrix* because ITM does not have title to the Aircraft. However, the same basic problem exists here: if we do not enjoin BNY, we will aid it in evading the proceedings in Luxembourg, to the prejudice of other creditors. Given the public nature of ITM's insolvency and the pendency of the Luxembourg Proceeding, and consistent with *Victrix,* we will stay BNY from going forward with the BNY Action against ITM, so that its claim against ITM, if any, can be fixed on its merits in the Luxembourg Proceeding.

### Conclusion

On remand, we grant Petitioner's motion and enjoin continued prosecution of the BNY Action. BNY is free to assert a claim in the Luxembourg Proceeding on account of ITM's alleged guarantee. In relevant part, the Dis-

trict Court's remand order provides as follows:

If the Bankruptcy Court grants the Section 304 application, the petitioner's claims should remain with the Bankruptcy Court and be addressed in the same manner and with the same limitations, as the other claims to the [Aircraft] and spare parts.

Consistent therewith, upon the sale of the Aircraft, we direct Petitioner promptly to take necessary and appropriate action to fix ITM's interest in the sale proceeds, subject to the claims, if any, asserted against that interest.